### Andrew McClary v. Benjamin Hartwell.

*Constitutional law: Private property: Necessity: Water-power manufactories.* In proceedings under the statute *(Sess. L. 1865, p. 651, and Sess. L. 1867,·p. 193)*, to obtain water-power to operate a manufactory, the necessity for the taking must, under our constitution *(Art. XVIII. § 2)*, be passed upon; and a finding that the taking is to be for the public use is not sufficient.

*Costs.*    The proceedings in the court below having been without jurisdiction, in consequence of a defect in the statute, in not providing that the necessity for the taking shall be passed upon, this court, on vacating and setting them aside, awards the costs of this court alone.

*Heard May 1.    Decided May 14.*

*Certiorari* to Kalamazoo Circuit.

*Edwards & Sherwood,* for plaintiff in *certiorari.*

*May & Buck,* for defendant in *certiorari.*

Cooley, J.

This is a *certiorari* to review certain proceedings taken for the purpose of appropriating lands of McClary, in order to obtain water power to operate a foundry and machine shop. The proceedings are taken under the act entitled "An act to encourage the erection and support of water-power manufactories," approved March 21, 1865 (*S. L. 1865, p. 651*), as amended March 27, 1867 (*S. L. 1867, p. 193*). The record shows that under the provisions of these acts a petition was presented to the circuit court for the county of Kalamazoo, for the appointment of commissioners to establish the height of the proposed dam and to assess the damages to the parties whose lands would be flowed; that commissioners were appointed by the court, who report that the present machinery of the petitioner, propelled by the water power created by his present dam, is for the public use, and that they are informed by him, corroborated by his neighbors, that the contemplated additions he intends to make to the property, will also be for public use; and they assess McClary's damages for the flowing at seventy-five dollars.

Numerous objections are taken to the proceedings, but as one of them is fatal, the others need not be considered. The constitution explicitly requires that when private property is taken for the use or benefit of the public, the necessity for such taking shall be ascertained, either by a jury or by commissioners appointed by a court of record.— *Art. XVIII.*, § *2*. The act of 1865 appears to have wholly misapprehended or overlooked this provision; for it contains no requirement that the necessity for the taking shall be passed upon, nor did the order of the court appointing commissioners in this case direct them to consider that subject, nor did they consider it in fact. It would seem, therefore, that the proceeding must be wholly ineffectual.

It is insisted, however, that when the commissioners find that the taking is to be for the public use, this is equivalent to a finding of the necessity for taking it for the public use. But this is a mistake. It is by no means necessary that private property should be used by the public in every case in which such a use is possible. The state might perhaps put to some public use all the private property in its capital town, if it had the power to appropriate it; but it could hardly be insisted that it was needful. This petitioner's machinery might be taken and operated through state agents, but it would not be easy to suggest any reason of necessity or policy for doing so. The constitution contemplates the possibility that a disposition may at some time exist to seize property for public uses, without any need whatever; and it has guarded against it by providing for an impartial tribunal, to whom the question of necessity shall in every case be submitted. The finding of the necessity cannot in any instance be dispensed with, nor can any thing be accepted as a substitute for it.

The proceedings complained of must be wholly set aside and vacated, with costs of this court; but as the circuit court was without jurisdiction, in consequence of the defect in the law, we do not go further in awarding costs.

CHRISTIANCY, CH. J., and CAMPBELL, J., concurred.

GRAVES, J., did not sit in this case.